# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

MICHAEL EZELL

versus

LT. RANDY SEAL, ET AL.

CIVIL ACTION

23-1514-SDD-EWD

## RULING

Before the Court are cross motions for summary judgment. The first is a Motion for Partial Summary Judgment[1] filed by Plaintiff Michael Ezell ("Plaintiff"). The State of Louisiana, through the Louisiana Department of Public Safety and Corrections (the "DPSC") and Lieutenant Randy Seals ("Lt. Seals") (collectively, the "Defendants") oppose the motion,[2] and Plaintiff has filed a reply.[3] The second is a Motion for Summary Judgment[4] filed by Defendants. Plaintiff opposes the motion,[5] and Defendants have filed a reply.[6] For the following reasons, Defendants' Motion for Summary Judgment[7] is granted, and Plaintiff's claims against Defendants are dismissed. Consequently, Plaintiff's Motion for Partial Summary Judgment[8] is denied as moot.

## I.    BACKGROUND

On March 11, 2020, Captain Brian Guillot ("Captain Guillot") and Lt. Seals searched Plaintiff's prison cell on Louisiana State Penitentiary's TU Lower B Tier.[9] During

---

[1] Rec. Doc. 47.
[2] Rec. Doc. 50.
[3] Rec. Doc. 53.
[4] Rec. Doc. 56.
[5] Rec. Doc. 59.
[6] Rec. Doc. 60.
[7] Rec. Doc. 56.
[8] Rec. Doc. 47.
[9] Rec. Doc. 56-4, ¶¶ 2–4.

the search, Plaintiff was outside his cell and handcuffed behind his back.[10] Cadet Ty Bowman ("Cadet Bowman") was on the TU Lower B Tier during the search as well.[11]

Lt. Seals found a contraband cellphone in Plaintiff's cell and asked Plaintiff for the phone's PIN.[12] He then told Plaintiff to step back to the wall with Cadet Bowman so that the search could resume.[13] Plaintiff "refused to move, pulled away from Cadet . . . Bowman's attempt to grab [him], and shouted 'don't put your [f'ing] hands on me.'"[14] A physical altercation ensued, in which Plaintiff bit Cadet Bowman.[15]

The parties dispute other details related to the physical altercation. Defendants contend that "[i]n order to end Plaintiff's resistance and regain control of the situation, Plaintiff was brought to the ground and physically restrained through the combined effort of Defendant Seals, Cadet Bowman, and Captain Guillot."[16] Plaintiff denies this assertion but provides no support for his denial other than the following: "Denied. (Ex.1 Michael Ezell ARP, Ex.2 Chris Johnson witness statement, Ex.4 Eddie Christoff witness statement, Ex.3 Curtis Lilly witness statement.)"[17] Likewise, Defendants assert that "[w]hen Plaintiff was brought back to his feet, he lunged at Defendant Seals multiple times while attempting to break free from the physical restraint of the other corrections officers."[18] Plaintiff denies this assertion as follows: "Denied. (Ex.1 Michael Ezell ARP)."[19]

---

[10] *Id.* at ¶ 5.
[11] *Id.* at ¶ 8.
[12] *Id.* at ¶¶ 6–7.
[13] *Id.* at ¶ 8.
[14] *Id.* at ¶ 9.
[15] *Id.* at ¶ 11.
[16] Rec. Doc. 56-1, ¶ 5 (citing Rec. Doc. 56-4, ¶¶ 9–10; Rec. Doc. 53-1, p. 4).
[17] Rec. Doc. 59-5, ¶ 5.
[18] Rec. Doc. 56-1, ¶ 7 (citing Rec. Doc. 56-4, ¶¶ 12–15; Rec. Doc. 53-1, pp. 4–5).
[19] Rec. Doc. 59-5, ¶ 7.

Plaintiff brought suit in state court claiming: (1) Lt. Seals is liable in his individual capacity under 42 U.S.C. § 1983 for violating Plaintiff's Eighth Amendment rights by using excessive force;[20] (2) Plaintiff is entitled to attorney's fees, costs, and punitive damages under 42 U.S.C. §§ 1983 and 1988; (3) Lt. Seals is liable for injuring Plaintiff through intentional and/or negligent acts and/or omissions under Louisiana state law; and (4) DPSC is vicariously liable for Lt. Seal's tortious acts under Louisiana's theory of *respondeat superior*.[21] Defendants removed suit to this Court pursuant to 42 U.S.C. §§ 1331, 1343, and 1442.[22]

On November 9, 2023, Defendants filed a motion to dismiss Plaintiff's claims pursuant to Federal Rules 12(b)(1) and 12(b)(6).[23] The Court denied that motion on June 24, 2024.[24] Plaintiff then filed a Motion for Partial Summary Judgment on April 2, 2025, moving to strike 13 of Defendants' affirmative defenses.[25] Defendants filed a Motion for Summary Judgment on June 13, 2025, seeking to dismiss the claims asserted against them.[26]

---

[20] Plaintiff has represented throughout this suit that he only asserted a *respondeat superior* claim against the DPSC. *See* Rec. Doc. 47-2, p. 7 ("The State of Louisiana was sued in its capacity as the employer of the correctional officer Defendants for vicarious liability under the doctrine of respondeat superior on the State law claims asserted in this case."); Rec. Doc. 11, p. 6 ("[A]s to the State of Louisiana, there was no official capacity (Monell) claim pled. . . . The State of Louisiana was sued under *respondeat superior* as vicarious liability on the state law claim of battery plead against Lt. Randy Seal.") The Court notes, however, that Plaintiff' state court Petition asserts a § 1983 claim against "Defendants." DPSC is not a "person" who can be sued under § 1983. *See Washington v. Louisiana*, 425 F. App'x 330, 333 (5th Cir. 2011) (per curiam) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63–71 (1989)). To the extent Plaintiff has pled a § 1983 claim against the DPSC, that claim is dismissed.
[21] Rec. Doc. 1-1, pp. 4–5.
[22] Rec. Doc. 1.
[23] Rec. Doc. 10.
[24] Rec. Doc. 27.
[25] Rec. Doc. 47.
[26] Rec. Doc. 56.

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[27] "The movant bears the initial burden and must identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"[28]

However, "the movant 'need not negate the elements of the nonmovant's case.'"[29] That is, "[a] movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial."[30] "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."[31]

If the movant carries the burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"[32] The non-movant's burden is not satisfied

---

[27] Fed. R. Civ. P. 56(a).
[28] *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)).
[29] *Id*. (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc))).
[30] *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (citing *Celotex*, 477 U.S. at 323 ("we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.") (emphasis in original)).
[31] *Id*. (citing *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)).
[32] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citations omitted).

by "conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[33]

Ultimately, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."[34] Additionally,

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.[35]

## III. LAW AND ANALYSIS

### A. Discovery Dispute

Defendants assert that the unsworn declarations of Christopher Johnson ("Johnson"), Curtis Lilly ("Lilly"), and Eddie Christoff ("Christoff") submitted by Plaintiff are procedurally improper and thus cannot be considered on summary judgment.[36] They argue that unsworn declarations must strictly comply with 28 U.S.C. § 1746, which requires that they be true and correct, made under penalty of perjury, signed, and dated.[37] Johnson, Lilly, and Christoff's unsworn declarations are signed and denote that they are "true and correct" and made "under penalty of perjury."[38] Though undated, "the timing of the testimony can easily be gleaned from the declaration itself."[39] Thus, similar to a division of this Court's decision in *Adams v. United Association of Journeymen*,[40] strict

---

[33] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted).
[34] *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (cleaned up).
[35] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (internal citations omitted).
[36] Rec. Doc. 60, pp. 1–2.
[37] *Id.*
[38] *See* Rec. Docs. 59-2 (Johnson); 59-3 (Lilly); Rec. Doc. 59-4 (Christoff).
[39] *Adams v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the United States & Canada, AFL-CIO, Loc. 198*, 469 F. Supp. 3d 615, 643 (M.D. La. 2020) (citing *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 382 n.2 (5th Cir. 2013) (quoting 28 U.S.C. § 1746(2)); *Nissho–Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988)).
[40] *Id.*

compliance with 28 U.S.C. § 1746 is inappropriate. Rather, "[a]n unsworn declaration is not competent summary judgment evidence *unless* it contains statements that it was made 'under penalty of perjury' and is verified as 'true and correct.'"[41] As such, the Court will consider these declarations on summary judgment.

Defendants further argue that the Court cannot consider Lilly's declaration because it was not based on his personal knowledge.[42] Lilly's declaration states as follows: "I only witness [sic] injuries after effects. Missing tooth – Lassirations [sic] to wrist and ankles from restraints, - as stated by Mr. Ezell."[43] The Court disagrees with Defendants' contention that "Lilly's declaration is based upon what was told to him by Plaintiff[] and not his own personal knowledge . . . ."[44] Lilly's declaration states that he observed Plaintiff's injuries after the physical altercation. He then describes those injuries and explains that his observations align with Plaintiff's claimed injuries. Thus, the Court will consider Lilly's declaration on summary judgment.

## B. Section 1983 in General

The Civil Rights Act of 1964, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law.[45] It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State. . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . .[46]

---

[41] *Id.*
[42] Rec. Doc. 60, p. 2.
[43] Rec. Doc. 59-3.
[44] Rec. Doc. 60, p. 2.
[45] *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984); *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19 (1981).
[46] 42 U.S.C. § 1983.

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"[47]

To prevail on a § 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.[48] A § 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.[49]

### C. Excessive Force

Plaintiff sues Lt. Seals in his individual capacity, alleging Lt. Seals used excessive force against Plaintiff in violation of his Eighth Amendment rights.[50] "In evaluating excessive force claims under the Eighth Amendment, the 'core judicial inquiry' is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"[51] Although "'[t]he focus of this standard is on the detention facility official's subjective intent to punish,' intent is determined by reference to the well-known *Hudson* factors—'the extent of injury suffered, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.'"[52] "The amount of force used must be more than *de minimis*, 'provided

---

[47] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)); accord *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Jackson v. City of Atlanta, Tex.*, 73 F.3d 60, 63 (5th Cir. 1996); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir. 1985).
[48] *See Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir. 1984).
[49] *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986); *Angel v. City of Fairfield, Tex.*, 793 F.2d 737, 739 (5th Cir. 1986).
[50] *See* Rec. Doc. 1-1, pp. 1, 4–5.
[51] *Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016) (quoting *Hudson v. Mcmillian*, 503 U.S. 1, 7 (1992)).
[52] *Id.* at 452–53 (quoting *Kitchen v. Dall. Cnty.*, 759 F.3d 468, 477 (5th Cir. 2014)).

that the use of force is not of a sort "repugnant to the conscience of mankind."""[53] "[C]ourts . . . frequently [find] constitutional violations in cases where a restrained or subdued person is subjected to the use of force."[54] However, "[i]njury alone does not equate to excessive force."[55]

### D. Qualified Immunity

Lt. Seals asserts the affirmative defense of qualified immunity. The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[56] In striking this balance, qualified immunity shields "government officials performing discretionary functions" from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[57]

An "official can raise qualified immunity at any stage in the litigation—from Rule 12(b)(6) motions to dismiss, to Rule 12(c) motions for judgment on the pleadings, to Rule 56 motions for summary judgment, to Rule 50(b) post-verdict motions for judgment as a matter of law—and continue to raise it at each successive stage."[58] On this basis, when a public official asserts the defense of qualified immunity, the plaintiff has the burden of

---

[53] *Id.* at 453 (quoting *Hudson*, 503 U.S. at 2).
[54] *Id.* at 454 (internal quotations omitted) (quoting *Kitchen*, 759 F.3d at 479).
[55] *Waddleton v. Rodriguez*, 750 F. App'x 248, 255 (5th Cir. 2018).
[56] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).
[57] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.").
[58] *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 330–31 (5th Cir. 2020) (footnotes omitted).

establishing a constitutional violation and overcoming the defense.[59] To meet this burden, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[60] The court has discretion to decide these prongs in any order.[61]

An official's conduct is not objectively unreasonable "unless all reasonable officials in the [official's] circumstances would have then known that the [official's] conduct violated the plaintiff's rights."[62] When denying qualified immunity, a court must point to "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity."[63]

The Court addressed Lt. Seals's qualified immunity defense at the motion to dismiss stage of this case. It its Ruling, the Court held the following:

> At this stage, Plaintiff need only allege facts that plausibly indicate that Lt. Seal[s] acted "maliciously and sadistically to cause harm." Lt. Seal[s] "slamming" Plaintiff on his face and then into the bars of the prison cell was not conducive to gaining Plaintiff's compliance with his order to provide the phone's PIN number. Moreover, Plaintiff was handcuffed, and therefore did not present a safety or security risk. Thus, from the current allegations the inference could be drawn that any perceived threat experienced by Lt. Seal[s] was unreasonable based on Plaintiff's use of inflammatory language and Plaintiff's lack of compliance. Plaintiff claims he suffered injuries to his right shoulder, right arm, right hand, and lost a gold tooth. If proven, the injuries alleged could demonstrate that the amount of force used was more than *de minimis*. The Court finds it plausible that Lt. Seal[s]'s use of force was applied maliciously and satisfied a desire to punish Plaintiff for his actions rather than to restore discipline. The Court rejects Defendants' arguments that Plaintiff's allegations are "general and conclusory" and finds Plaintiff has adequately pled a constitutional violation.[64]

---

[59] *Jackson v. City of Hearne, Tex.*, 959 F.3d 194, 201 (5th Cir. 2020) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)).
[60] *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (citing *Aschcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).
[61] *Jackson*, 959 F.3d at 200.
[62] *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015).
[63] *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013).
[64] Rec. Doc. 27, p. 9 (footnotes omitted).

The evidence now before the Court, however, paints a different story. The facts presented on summary judgment are largely undisputed, but the parties do dispute the details of the physical altercation between Plaintiff, Lt. Seals, Captain Guillot, and Cadet Bowman. Considering the evidence presented on summary judgment, the Court finds the following.

Plaintiff was handcuffed behind his back and standing against a wall outside his cell during Lt. Seals and Captain Guillot's search.[65] Cadet Bowman was also outside Plaintiff's cell.[66] When Lt. Seals obtained the contraband cell phone, he ordered that Plaintiff step off the wall and come towards the bars of his cell.[67] At that point, Lt. Seals asked Plaintiff about the contraband cell phone, including what the phone's PIN was.[68] Plaintiff was then asked to step away from the bars of his cell and back to the wall.[69]

Lt. Seals called Plaintiff back to his cell.[70] He again asked Plaintiff for the phone's PIN[71] and told Plaintiff to step back to the wall with Cadet Bowman.[72] Plaintiff refused to move.[73] Lt. Seals started walking towards Plaintiff.[74] Cadet Bowman attempted to grab Plaintiff.[75] Plaintiff shouted, "don't put your [f'ing] hands on me."[76] Lt. Seals grabbed Plaintiff, and Plaintiff shrugged his shoulders in an attempt to defend himself.[77] Plaintiff was then brought to the ground and physically restrained by Lt. Seals, Captain Guillot, and Cadet Bowman.[78]

---

[65] Rec. Doc. 56-4, ¶¶ 2–5; Rec. Doc. 59-1, p. 4.
[66] Rec. Doc. 56-4, ¶ 8.
[67] *Id.* at ¶ 7; Rec. Doc. 59-1, p. 4.
[68] Rec. Doc. 56-4, ¶ 7; Rec. Doc. 59-1, p. 4.
[69] Rec. Doc. 59-1, p. 4.
[70] *Id.*
[71] *Id.*
[72] Rec. Doc. 56-4, ¶ 8.
[73] *Id.* at ¶ 9
[74] Rec. Doc. 59-1, p. 4.
[75] Rec. Doc. 56-4, ¶ 9.
[76] *Id.*
[77] Rec. Doc. 59-1, p. 4.
[78] Rec. Doc. 56-4, ¶ 10.

While on the ground, Plaintiff bit Cadet Bowman.[79] Plaintiff also attempted to pull up his boxers, and in response, Lt. Seals grabbed Plaintiff's arm and twisted it.[80] Plaintiff responded, "go ahead and break it [b*tch]."[81] Once Plaintiff reduced resistance, he was brought back to his feet.[82] While on his feet, Plaintiff lunged at Lt. Seals.[83] Someone then slammed Plaintiff's face into cell #3's bars.[84] After that, Plaintiff lunged at Lt. Seals a second time.[85] Captain Guillot order Lt. Seals to back away from Plaintiff, and Lt. Seals did so.[86] Captain Guillot and Cadet Bowman then removed Plaintiff from the TU Lower B Tier.[87]

Medical staff assessed Plaintiff that day and found that he had lacerations with minimal bleeding.[88] They also found that there was "no obvious sign of injury."[89] Plaintiff's treatment plan included cleaning his wounds and applying steri strips.[90] A facial x-ray was also ordered.[91] Plaintiff attests in his ARP that his vision in his right eye was very blurred, his eyes "bust open," his back never stopped hurting, his right hand was swollen, he lost his gold tooth, and that he had pain shooting to his shoulder blades.[92] Lilly observed Plaintiff's injuries after the incident and attests that such injuries included a missing tooth and lacerations to Plaintiff's wrists and ankles.[93] Defendants cite Plaintiff's medical

---

[79] *Id.* at ¶ 11. *See also* Rec. Doc. 59-1, p. 6.
[80] Rec. Doc. 59-1, p. 4.
[81] *Id.*
[82] Rec. Doc. 56-4, ¶ 12.
[83] *Id.*; Rec. Doc. 59-1, p. 4.
[84] Rec. Doc. 59-1, p. 4.
[85] *Id.* at pp. 4–5.
[86] Rec. Doc. 56-4, ¶ 13.
[87] *Id.* at ¶ 14; Rec. Doc. 59-1, p. 5.
[88] Rec. Doc. 56-3, p. 2.
[89] *Id.*
[90] *Id.*
[91] *Id.*
[92] Rec. Doc. 59-1, p. 5.
[93] Rec. Doc. 59-3.

records and contend that "[t]here is no indication that Plaintiff lost any teeth at that time, and a facial x-ray performed that day does not indicate any loss of teeth."[94] The Court cannot ascertain these alleged facts from Plaintiff's medical records.

Plaintiff argues that qualified immunity is a nonissue because the Court denied qualified immunity at the motion to dismiss stage.[95] Thus, according to Plaintiff, Defendants "were required to offer evidence showing that an issue of fact remains for trial as to Lt. . . . Seal[s]'s use of force."[96] However, "official[s] can raise qualified immunity at any stage in the litigation[,]" including on summary judgment.[97] When they do, it is the plaintiff's burden to establish a constitutional violation and overcome the defense.[98]

Plaintiff has failed to meet his burden. The only evidence of force attributable to Lt. Seals is that he:

- grabbed Plaintiff after Plaintiff 1) refused to step away from his cell, 2) resisted Cadet Bowman's attempt to grab him; and 3) told Cadet Bowman "don't put your [f'ing] hands on me";

- brought Plaintiff to the ground and physically restrained him after Plaintiff shrugged his shoulders to resist Lt. Seals grabbing him; and

- twisted Plaintiff's arm while Plaintiff was restrained on the ground in response to Plaintiff's attempt to pull up his pants.

---

[94] Rec. Doc. 56-2, p. 4.
[95] Rec. Doc. 59, pp. 2–3; Rec. Doc. 47-2, pp. 3–5.
[96] Rec. Doc. 59, p. 3.
[97] *Joseph on behalf of Est. of Joseph*, 981 F.3d at 330–31 (footnotes omitted).
[98] *Jackson*, 959 F.3d at 201 (citing *McClendon*, 305 F.3d at 323).

Plaintiff alleges that Lt. Seals "slammed him on his face and then slammed him into the bars of Cell 3[,]"[99] but Plaintiff has provided no evidence as to who slammed his face into cell 3's bars—whether that be Lt. Seals, Captain Guillot, or Cadet Bowman.

Considering the *Hudson* factors,[100] Lt. Seals's use of force "was applied in a good-faith effort to maintain or restore discipline" and not an attempt to "maliciously and sadistically . . . cause harm."[101] Similar to the Fifth Circuit's decision in *Waddleton v. Rodriguez*,[102] only the first *Hudson* factor of extent of the injury suffered weighs in Plaintiff's favor. "[T]he other four factors indicate that the use of force was applied in a good-faith effort to maintain or restore discipline."[103] Though Plaintiff was handcuffed behind his back, he 1) was physical and verbally resistant after an order to step away from his cell; 2) made sudden movements with intentions unknown to Lt. Seal; 3) bit Cadet Bowman; and 4) lunged at Lt. Seals multiple times.

Based on the foregoing, there was a need for Lt. Seals's application of force. The amount of force Lt. Seals used was appropriate in relation to that need, and the threat perceived was reasonable. "Prison disturbances 'may require prison officials to act quickly and decisively[,]'"[104] as Lt. Seals did in this case. Lt. Seals also made an effort to temper the severity of his forceful response by 1) getting Plaintiff back on his feet; and 2) removing himself from the physical altercation. Thus, Plaintiff has failed to meet his burden of proving an Eighth Amendment violation to overcome Lt. Seals's qualified immunity defense.

---

[99] Rec. Doc. 1-1, ¶ 13.
[100] *Hudson*, 503 U.S. at 2.
[101] *Id.* at 7.
[102] 750 F. App'x at 254–55.
[103] *Id.* at 254 (internal quotations and citations omitted).
[104] *Id.* at 255 (quoting *Hudson*, 503, U.S. at 6).

For these reasons, Defendants' Motion for Summary Judgment[105] is granted as to Plaintiff's § 1983 claim. Plaintiff's § 1983 claim and his claim for attorney's fees, costs, and punitive damages under §§ 1983 and 1988 are therefore dismissed. With no claim remaining to which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.[106] This action is therefore dismissed without prejudice to Plaintiff's right to reassert his state law claims in a court of competent jurisdiction. Consequently, Plaintiff's Motion for Partial Summary Judgment[107] is denied as moot.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment[108] is **GRANTED**, and this action is **DISMISSED WITHOUT PREJUDICE** to Plaintiff's right to reassert his state law claims in a court of competent jurisdiction. Plaintiff's Motion for Partial Summary Judgment[109] is **DENIED** as moot.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on this __6th__ day of __November__, 2025.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[105] Rec. Doc. 56.
[106] *See* 28 U.S.C. § 1367.
[107] Rec. Doc 47.
[108] Rec. Doc. 56.
[109] Rec. Doc 47.